UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JOHN A. CLIFFORD,

                            Plaintiff,                      **MEMORANDUM AND ORDER**

       -v-                                             19-CV-1724 (RRM) (AKT)

NASSAU COUNTY NEW YORK, *et al.*,

                            Defendants.
-------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, Chief United States District Judge.

       Plaintiff John A. Clifford, an attorney, brings this *pro se* action against Nassau County,

its District Attorney's Office (the "NCDAO"), Nassau County District Attorney Madeline

Singas, three named Assistant District Attorneys ("ADAs") and two Doe ADAs, the City of

Long Beach, its police department (the "LBPD"), Police Commissioner and City Manager

Michael Tangney, seven named LBPD officers and six Doe Officers, Impressive Towing and

Storage a/k/a Impressive Auto Body ("Impressive"), two Doe tow-truck operators employed by

Impressive, and two other individuals:  Marie Maraglio and her employer, Sarah Monaghan.  In a

nutshell, Clifford alleges § 1983 claim for false arrest/imprisonment, malicious prosecution, and

wrongful conviction; a *Monell* claim; a § 1985 conspiracy claim; and various state-law claims in

connection with March 29, 2016, "road-rage" incident that resulted in his arrest, prosecution, and

conviction for menacing in the second degree.  In two separate motions which raise many of the

same arguments, all defendants other than Impressive, Maraglio, and Monaghan now move

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all claims against

them.  For the reasons set forth below, those motions are granted in part and denied in part.

**BACKGROUND**

The following facts are drawn from Clifford's complaint and are assumed to be true for purposes of this memorandum and order.  On March 29, 2016, at approximately 4:50 p.m., Clifford was driving his 2005 Chevrolet Suburban north on Centre Street in Long Beach, New York.  (Complaint (Doc. No. 1) ¶¶ 18, 27.)  As he passed a Bank of America ATM, Marie Maraglio – who was working for Scout Design Shop, a business operated by Sarah Monaghan – suddenly pulled out of the bank's parking lot, cutting off Clifford's SUV.  (*Id.* ¶¶ 10–12, 17, 60.)  Clifford sped up and swerved to his left to avoid a collision with Maraglio's vehicle.  (*Id.* ¶¶ 18, 54.)

At that moment, Sgt. Lee Nielsen of the LBPD was jaywalking across Centre Street, heading west with his daughter.  (*Id.* ¶ 19.)  Nielsen, who was off-duty and dressed in plain clothes, was only about five to six car lengths in front of Clifford's and Maraglio's vehicles.  (*Id.* ¶¶ 19–20.)  Nielsen shoved his daughter to the curb on the west side of Centre Street, then swung a weighted bag he was carrying at Clifford's windshield.  (*Id.* ¶¶ 22–24.)  Clifford again swerved to his left to avoid colliding with Nielsen.  (*Id.* ¶ 25.)  Nielsen's bag missed the windshield but struck the rear passenger side window of Clifford's SUV.  (*Id.* ¶ 26.)

Clifford immediately stopped and alighted from his vehicle carrying a hatchet sheathed with a leather cover, which happened to be in the car.  (*Id.* ¶¶ 27–28.)  Seeing what appeared to be a crack in his window, Clifford pursued Nielsen and demanded that he return to Clifford's vehicle.  (*Id.* ¶ 29.)  After observing the damage he had caused, Nielsen told Clifford that he was a "cop" in what Clifford perceived as an attempt to avoid having to pay for the damage.  (*Id.* ¶ 30.)  When Clifford retorted that he was a retired "cop," Nielsen asked him what he was holding.  (*Id.* ¶ 54.)  Clifford replied that it was a hatchet.  (*Id.*)  Nielsen told Clifford to turn off

2

his car, then used his cell phone to summon defendant Police Officer Christopher Ryan, who was

on duty in the LBPD stationhouse, located just across the street from where Nielsen was

standing.  (*Id.* ¶¶ 33–34, 54.)

Ryan arrived on the scene shortly thereafter.  After Nielsen brought his attention to the

hatchet, Ryan asked Clifford why he "went after the sergeant."  (*Id.* ¶ 54.)  Clifford described

what had happened and Nielsen admitted striking Clifford's SUV, though he claimed to have

used his hand and not his bag.  (*Id.*)  At Nielsen's direction, Ryan then handcuffed Clifford and

brought him into the stationhouse.  (*Id.* ¶¶ 34–36.)  According to Clifford's complaint, defendant

Police Officer Reese Nielsen – now the wife of Sgt. Nielsen – witnessed the entire incident but

did not intervene.  (*Id.* ¶ 38.)

Clifford was processed by another sergeant, John Doe #4, who was acting under the

command of either defendant Lt. Edward Ryan or defendant John Doe #5, one of whom was the

commanding officer at the stationhouse at the time.  (*Id.* ¶ 39.)  Clifford alleges that the

commanding officer was subordinate only to defendant Michael Tangney, who was both the City

Manager and Commissioner of the LBPD.  (*Id.* ¶¶ 7, 39.)  However, Clifford does not allege any

acts or omissions by Lt. Ryan or Commissioner Tangney.

A desk sergeant – either defendant Sgt. Eric Nadel or John Doe #3 – assigned defendant

Police Officer Rudy Pennetti to be the arresting officer.  (*Id.* ¶ 37.)  Pennetti searched Clifford's

car, then called defendant Impressive to impound the car.  (*Id.* ¶ 36.)  At Pennetti's direction,

Impressive towed the car to its impound lot.  (*Id.* ¶ 49.)

Although Pennetti was the arresting officer, defendant Police Officer J. Brennan prepared

and witnessed the arrest forms, including Sgt. Nielsen's supporting deposition.  (*Id.* ¶ 40.)  That

deposition allegedly conceded that Sgt. Nielsen was "the initial aggressor," but also contained

the sergeant's statement: "I was holding a bag and the bag struck the car as I moved out of the way." (*Id.*)  Although Clifford claims that this statement was "scientifically and factually impossible" and "a clear fabrication of [his] guilt and suppression of his innocence," the desk sergeant accepted the supporting deposition.  (*Id.* ¶ 42.)

Clifford protested his innocence to the desk sergeant, requesting that a cross-complaint against Sgt. Nielsen be entertained or, in the alternative, that the LBPD's Internal Affairs Department ("IAD") be immediately notified.  (*Id.* ¶ 43.)  The desk sergeant denied these requests.  (*Id.* ¶ 44.)  Clifford also asked for an appearance ticket in lieu of incarceration, but the desk sergeant denied this request as well.  (*Id.* ¶ 45.)

Pennetti then drafted a criminal complaint which charged Clifford with three class A misdemeanors: menacing in the second degree, criminal possession of a weapon in the fourth degree, and endangering the welfare of a child.  (*Id.* ¶ 46.)  On March 30, 2016, Clifford was arraigned on these charges.  Defendant ADA Daniel V. Grusenmeyer represented the NCDOA at this arraignment, where he allegedly followed "official policies" of the NCDOA by supporting and/or ignoring police misconduct.  (*Id.* ¶ 47.)  Clifford argued that Sgt. Nielsen was "the initial aggressor," but that argument was unavailing and bail was set at $500.00 cash.  (*Id.* ¶ 48.)

After posting bail, Clifford retrieved his vehicle from Impressive's impound lot "at great expense," and brought it to two auto repair shops.  (*Id.* ¶¶ 49–50.)  Although his car window proved to be scratched, not cracked, both shops estimated that it would cost more than $250 to repair the damage.  (*Id.* ¶ 51.)

Sometime that afternoon, Clifford – who could not go to the LBPD stationhouse because an order of protection forbade him from coming within 100 feet of Sgt. Nielsen – sent an email to tips@lbpd.com.  (*Id.* ¶ 54.)  In that email, Clifford gave a detailed account of the events

preceding his arrest, admitting that he had been holding the sheathed hatchet throughout his encounter with Sgt. Nielsen. (*Id.*) Clifford requested, among other things, that the LBPD collect and preserve video surveillance tapes from the Bank of America, the nearby Long Island Rail Road station, and nearby shops, alleging that these videos would either prove or disprove his justification defense. (*Id.*) Clifford implies that the information in this email established police misconduct and that defendant John Doe #6 – the LBPD officer supervising the tips@lbpd.com website that day – had the duty to bring this information to the attention of the IAD but failed to do so. (*Id.* ¶ 55.) Clifford also alleges – presumably in the alternative, that John Doe #7 – the officer supervising the IAD on that day failed to investigate Clifford's claims. (*Id.* ¶ 56.)

On April 1, 2016, Clifford emailed the NCDOA, seeking to file a cross-complaint against Sgt. Nielsen. (*Id.* ¶ 57.) Clifford alleges that, since the damage to his vehicle exceeded $250, the sergeant could and should have been charged with criminal mischief in the third degree, a class E felony, and two class A misdemeanors: official misconduct and obstructing governmental administration in the second degree. (*Id.* ¶ 51.) However, defendant Supervisory ADA Warren N. Thurer not only declined to charge Sgt. Nielsen but chose not to dismiss the charges against Clifford. (*Id.* ¶ 58.)

Clifford then conducted his own investigation in an attempt to ascertain the identity of the driver of the car with which he had nearly collided on March 29, 2016. He obtained Bank of America records indicating that the ATM transaction just prior to the collision was a withdrawal by Sarah Monoghan. (*Id.* ¶ 60.) Clifford delivered these records to Grusenmeyer, but the ADA did not interview Monaghan until March 7, 2017 – 146 days later. (*Id.*)

During the March 7 interview, Grusenmeyer ascertained that it was Maraglio, not Monaghan, who had visited the Bank of America ATM and who had been driving the vehicle

with which Clifford nearly collided.  (*Id.* ¶ 63.)  The ADA interviewed Maraglio and obtained a statement confirming that Sgt. Nielsen was the initial aggressor.  (*Id.* ¶ 64.)  Nonetheless, Grusenmeyer refused to dismiss the charges against Clifford.  (*Id.* ¶ 65.)

On April 20, 2016, Clifford filed a notice of claim with the City of Long Beach (the "City").  (*Id.* ¶ 66.)   Four days later, Lt. Ryan ordered an LBPD officer, defendant John Doe #8, to call Impressive and have Clifford's legally parked vehicle towed to the impound lot.  (*Id.* ¶ 68.)  On July 13, 2016, the City deposed Clifford pursuant to New York County Law 50-e but took no further action on his claim.  (*Id.* ¶ 67.)  Clifford's complaint does not allege that he also filed a notice of claim with Nassau County (the "County").

Thereafter, Clifford successfully moved to have his criminal case transferred to the Nassau County District Court in Hempstead, New York.  (*Id.* ¶ 69.)  There, the case was assigned to defendant ADA Thomas Lai to prosecute.  (*Id.*)[1]  Clifford alleges, on information and belief, that Lai "judge and jury shopped … until he obtained a jury that was in his estimation, favorable to him."  (*Id.* ¶ 70.)  At the trial, Lai allegedly used the "scientifically and factually impossible statement that it was … Sgt. Nielsen's bag that hit plaintiff's car and not … Nielsen."  (*Id.* ¶ 72.)  Clifford was found guilty of the menacing charge but acquitted of the other two charges.  (*Id.* ¶ 74.)

<u>The Instant Action</u>

On March 26, 2019 – before the direct appeal from his criminal conviction had been adjudicated – Clifford commenced this action, naming nineteen defendants, not counting ten John/Jane Does.  Seventeen of the nineteen named defendants and all ten Does can be grouped into three categories:  the "County Defendants," the "City Defendants," and the "Impressive

---

[1] Clifford's complaint misspells this ADA's name, referring to him as Lei, not Lai.

Defendants."  The first category contains the County, the NCDAO, District Attorney Singas, Supervisory ADA Thurer, ADAs Grusenmeyer and Lai, and John/Jane Does #1 and #2, who are alleged to be the supervisors of Grusenmeyer and Lai, respectively.  The second category contains the City, the LBPD, Tangney, seven named members of the LBPD – Lt. Ryan, Sgts. Nielsen and Nadel, and Officers Nielsen, Pennetti, Ryan, and Brennan – and John/Jane Does #3– #8.  The third category includes only Impressive and its employees John/Jane Does #9 and #10 – the tow truck operators who towed Clifford's SUV to the impound lot on March 29, 2016, and April 20, 2016, respectively.  The remaining defendants – Sarah Monaghan and Marie Maraglio – do not fit into any of these three categories.  Monaghan is sued both in her individual capacity and in her capacity as the owner of the Scout Design Shop and the employer of Maraglio. Maraglio is sued only in her individual capacity.  All other individuals named as defendants in this action are sued in both their official and individual capacities.

The complaint alleges eight causes of action:  three federal claims and five state-law claims.  The first cause of action is a claim pursuant to 42 U.S.C. § 1983, brought against Tangney, all police officers, and "the district attorney defendants."  (Compl. ¶ 76.)  Clifford alleges that these defendants violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights by "unlawfully detaining, arresting, accusing, imprisoning, prosecuting and convicting" him and by "impounding his vehicle on two separate occasions without probable cause or as a legitimate caretaker function."  (*Id.*)  In addition, he alleges that these defendants "took an active role in creating and/or perpetuating the charges against [him] solely to effectuate an unlawful arrest and conviction and not to effectuate a just result."  (*Id.* ¶ 78.)

The second cause of action is a *Monell* claim, seeking to impose municipal liability on the County and City.  This cause of action alleges that these defendants – through their agencies,

the NCDAO and the LBPD – had actual or *de facto* "policies, customs or usages of failing to properly train, supervise or discipline … police officers and district attorneys concerning correct practices in conducting investigations and … prosecutions; making and processing arrests; their obligations not to promote or condone perjury and not to assist in the prosecution of innocent persons …." (*Id.* ¶ 87.)  Clifford further alleges that as a result of these policies, practices, customs, and usages, these defendants "permitted and tolerated a pattern and practice of unconstitutional, unjustified, unreasonable and illegal abuses including … arrests of innocent persons by police officers and unlawful prosecutions by … district attorneys …." (*Id.*)

Clifford's third cause of action alleges a conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985.  Clifford alleges that the police defendants conspired with the district attorney defendants and other individuals to deprive him of his constitutional rights and "took numerous steps to delay, prolong and corrupt [his] right to a speedy trial and fair jury." (*Id.* ¶ 98.)

The remaining five causes of action advance state-law claims.  The fourth cause of action principally alleges that the County, City, NCDAO, LBPD, police defendants and district attorney defendants violated Article 1 of the New York State Constitution by falsely arresting, detaining, imprisoning, prosecuting, and convicting Clifford without probable cause or reasonable suspicion.  (*Id.* ¶ 102.)  The fifth cause of action accuses the County Defendants, the City Defendants, and John Does #9 and #10 of the tort of fraudulent misrepresentation.  (*Id.* ¶¶ 110–13.)  The sixth cause of action accuses these same defendants, except for John/Jane Does #9 and #10, of the torts of abuse of process and malicious prosecution.  (*Id.* ¶¶ 116–23.)  The seventh cause of action alleges negligence on the part of all of the named defendants and John Does #3–

#8, (*id.* ¶¶ 126 – 35), while the eighth and final cause of action alleges that defendants committed various other, unspecified state-law torts, (*id.* ¶ 138).

According to a status report filed by Clifford on June 11, 2019, (Doc. No. 35), all of the defendants were served on June 7, 2019.  However, in a cross-motion filed on August 28, 2019, Clifford stated that he was uncertain whether Maraglio had ever received the summons and complaint that had been served on her place of business and requested permission to re-serve her personally at her residence.  (Doc. No. 47 at 11.)  In that same cross-motion, Clifford reported learning that Reese Nielsen was Sgt. Nielsen's daughter, and sought permission to substitute Sgt. Nielsen's fiancée and fellow police officer, Alexandra Nielsen, for Reese Nielsen.  (*Id.* at 11–12.)   The Court granted these two requests, deeming the complaint amended to change the name of defendant Reese Nielsen to Alexandra Nielsen and permitting Clifford to re-serve Maraglio. (*See* Order dated Oct. 8, 2019.)  Clifford served Maraglio for a second time on October 21, 2019. (*See* Affidavit of Service (Doc. No. 61).)

To date, neither Maraglio nor the Impressive Defendants have answered or moved to dismiss the complaint.  In contrast, Monaghan has not only answered the complaint but also cross-claimed against her co-defendants.

<u>The Motions at Bar</u>

Both the County Defendants and the City Defendants now move to dismiss Clifford's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Memorandum of Law in support of the County Defendants' motion (the "County Defendants' Memo") (Doc. No. 53) raises five arguments, the first two of which are unique to the County.  First, the County Defendants argue that they are all shielded by the doctrine of absolute prosecutorial immunity.

Second, they argue they are also entitled to immunity under the Eleventh Amendment of the United States Constitution.

The County Defendants' remaining arguments are similar, if not identical, to those raised in the Memorandum of Law in Support of the City Defendants' Motion to Dismiss (the "City Defendants' Memo") (Doc. No. 62). Point III of the County Defendants' Memo – mislabeled as an argument pertaining only to the § 1983 claim – seeks to dismiss all three federal causes of action. Specifically, this point argues that Clifford's complaint fails to plead a § 1983 claim for malicious prosecution, a § 1985 conspiracy claim, and a *Monell* claim against the County and its employees in their official capacities. The City Defendants make similar arguments, albeit in four separate points. Point I of the City Defendants' Memo argues that the federal and state false arrest/imprisonment, malicious prosecution, wrongful conviction, and conspiracy claims set forth in Clifford's first and fourth causes of action are barred by his criminal conviction. Point III seeks to dismiss the personal liability claims against Tangney on the ground that the complaint does not allege his personal involvement in the alleged Constitutional violations. Point IV argues that Clifford's complaint fails to state a claim for municipal liability. And Point V argues that Clifford has failed to state a § 1985 conspiracy claim.

The County Defendants' fourth point and the City Defendants' second point both seek to dismiss all of Clifford's state-law claims, but on different bases. The County Defendants argue that Clifford never served the County with a notice of claim, as mandated by New York General Municipal Law § 50-e. The City Defendants argue that Clifford's state-law claims are time-barred because he failed to commence this action within one year and ninety days after those claims accrued, as required by New York General Municipal Law § 50-i. Point V of the County Defendants' Memo and Point VI of the City Defendants' Memo both urge the Court to decline to

10

exercise supplemental jurisdiction over the state-law claims if the Court has already dismissed all of Clifford's federal claims.

Clifford opposes most, but not all, of these arguments. With respect to the City Defendants' first argument, Clifford asserts that these defendants have no more than qualified immunity which is "defeated by their colossal bad-faith." (Clifford's Affirmation in Opposition to County Defendants' Motion ("Opposition to the County's Motion") (Doc. No. 54) at 2.) With respect to the second argument, Clifford argues that the County and the NCDAO are not entitled to Eleventh Amendment immunity.

In contrast, Clifford tacitly concedes that his § 1983 claims will fail unless his conviction is reversed. In his Opposition to the County's Motion, Clifford acknowledges that his case "goes completely out the window if his appeals are unsuccessful." (*Id.* at 9.) Similarly, in his Affirmation in Opposition to the City Defendants' Motion ("Opposition to the City's Motion") (Doc. No. 63)), Clifford states that he "agrees" with the argument that his § 1983 claims are barred by his criminal conviction, but asserts that it would "unjust" to dismiss this claim before his criminal appeal is adjudicated. (*Id.* at 7–8.)[2]

Clifford does not address the *Monell* issue in the Opposition to the County's Motion, other than to assert that "Nassau County has a poor reputation for protecting citizen's Constitutional rights and has paid out millions upon millions of dollars to satisfy *Monell* judgments." (Opp. to County's Mot. at 10.) In contrast, he addresses the *Monell* issue at length in his Opposition to the City's Motion, though he never identifies any specific municipal policy or practice. Rather, he accuses the LBPD of engaging in nepotism, racism, and the "blue wall of silence," (*id.* at 9), and asserts that the officers' actions in connection with this case are evidence

---

[2] The Court uses the page numbers used by Clifford to designate the pages of the Opposition to the County's Motion.

of unconstitutional practice and policies.  However, he does mention two other incidents: one in which he was breathalyzed by an LBPD officer (possibly Sgt. Nielsen) after a traffic accident in which his vehicle was rear-ended and another in which Sgt. Nielsen allegedly used excessive force in apprehending a minor, causing injury to the minor's eye with his baton.  (*Id.* at 10, 11.)

Clifford does not address the § 1985 issue in the Opposition to the County's Motion, but he addresses the elements of a § 1985 in the Opposition to the City's Motion.  There, he alleges that there was a conspiracy between Sgt. Nielsen and Tangney to "keep the prosecution of plaintiff going knowing there was no probable cause to arrest plaintiff," and that his allegations that the LBPD is comprised largely of white officers who are longtime resident of Long Beach – neither of which is containing the complaint – are sufficient to establish racial animus.  (Opp. to City's Mot. at 16.)

With respect to arguments relating to the state-law claims, Clifford asserts that "no notice of claim is necessary in 1983 cases."  (Opp. to County's Mot. at 11.)  In addressing the issue of whether the state-law claims are time-barred, Clifford asserts that the malicious prosecution and wrongful conviction claims will not accrue unless and until his conviction is overturned.  (Opp. to City's Mot. at 30.)  He makes no argument with respect to the timeliness of the other state-law claims.

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted."  In evaluating a Rule 12(b)(6) motion, the Court assumes the truth of the facts alleged and draws all reasonable inferences in the nonmovant's favor.  *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).  Although all factual allegations contained in the complaint are assumed to be true, this tenet is

"inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Typically, "submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations omitted). However, "a lawyer representing himself ordinarily receives no such solicitude at all." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n. 4 (2d Cir. 2001)).

A complaint need not contain "detailed factual allegations," but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 570).

## DISCUSSION

### I.   Prosecutorial Immunity

The County Defendants' first argument is that they are "shielded by the doctrine of Absolute Immunity." (County Def. Memo. at 4.) As they correctly note, "[a] prosecutor acting in the role of an advocate in connection with a judicial proceeding is entitled to absolute immunity for all acts 'intimately associated with the judicial phase of the criminal process.'" *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "These functions include deciding whether to bring charges and

13

presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." *Id.* However, prosecutors are absolutely immune from suit "only when acting as advocates and when their conduct involves the exercise of discretion." *Flagler v. Trainor*, 663 F.3d 543, 547 (2d Cir. 2011) (citing *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)). "A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley*, 509 U.S. at 273.

"Although all investigative activity could be considered in some sense to be 'preparing for the initiation of judicial proceedings,' the Supreme Court has sought to draw a line between those preparatory steps that a prosecutor takes to be an effective advocate of a case already assembled and those investigative steps taken to gather evidence." *Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998) (quoting *Buckley*, 509 U.S. at 273). For example, the Supreme Court has found that acts such as "advising the police in the investigative phase of a criminal case" are not so "intimately associated with the judicial phase of the criminal process" as to qualify for absolute immunity. *Burns v. Reed*, 500 U.S. 478, 493 (1991); *see Blouin ex rel. Estate of Pouliot v. Spitzer*, 356 F.3d 348, 357 (2d Cir. 2004) ("Even in the investigative phase of a criminal case, advice by state prosecutors warrants only qualified immunity…."). Similarly, the Supreme Court has held that prosecutors do not enjoy absolute immunity where they are alleged to have "fabricat[ed] evidence during the preliminary investigation of a crime." *Buckley*, 509 U.S. at 261.

In determining whether particular actions of a government official are shielded by absolute immunity, courts apply a "'functional approach,' … which looks to 'the nature of the

14

function performed….'" *Buckley*, 509 U.S. at 269 (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)).  Because "absolute immunity is an affirmative defense," *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005), "[a]n official claiming immunity bears the burden of showing that the particular immunity claimed applies." *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (citing *Burns*, 500 U.S. at 486–87).  However, when the nature of the function performed by an individual prosecutor is "clear from the face of the complaint …, the absolute immunity defense may be resolved as a matter of law on a motion to dismiss the complaint pursuant to Rule 12(b)(6)." *Shmueli*, 424 F.3d at 236.

In this case, it is clear from the face of the complaint that at least some of the County Defendants are entitled to absolute prosecutorial immunity.  First, the only allegations relating to Supervisory ADA Thurer are that he declined to charge Sgt. Nielsen and failed to dismiss the charges against plaintiff.  (Compl. ¶ 58.)  Thurer enjoys absolute immunity with respect to these decisions regarding whether to bring charges or continue a prosecution.  *See, e.g.*, *Imbler*, 424 U.S. at 430 (prosecutor has absolute immunity in deciding whether or not to commence a prosecution); *Simon*, 727 F.3d at 171 ("deciding whether to bring charges" among functions for which prosecutors enjoy absolute immunity).  Although the complaint asserts that Thurer conspired with others and implies that he acted in bad faith and with malice against Clifford, neither an "allegation that an act was done pursuant to a conspiracy … [nor] an allegation that it was done in bad faith or with malice … defeats a claim of absolute immunity." *Dorman v. Higgins*, 821 F.2d 133, 139 (2d Cir. 1987).  Accordingly, Thurer is entitled to absolute immunity and is dismissed from the action.

Clifford makes similar allegations against ADA Grusenmeyer, who represented the NCDAO at Clifford's arraignment and who belatedly interviewed both Monoghan and Maraglio.

(Compl. ¶¶ 47, 60, 64–65.)  Clifford implies that Grusenmeyer should have dismissed the case against him at arraignment rather than "ignoring police misconduct," (*id.* ¶ 47), and alleges that Grusenmeyer improperly "refused to dismiss the charges" after learning from Maraglio that the Sgt. Nielsen was the initial aggressor against Clifford, (*id.*¶ 65), or to dismiss the charges on speedy trial grounds.  As noted above, an ADA is entitled to absolute immunity with respect to decision regarding whether to charge or continue prosecutions.  The claims against Grusenmeyer are therefore dismissed.

The only allegations against ADA Lai relate to the manner in which he conducted the trial.  Specifically, Clifford's complaint alleges that Lai "judge and jury shopped … until he obtained a jury that was in his estimation, favorable to him" and introduced the "scientifically and factually impossible statement that it was … Sgt. Nielsen's bag that hit plaintiff's car and not … Nielsen."  (*Id.* ¶¶ 70, 72.)  Since Lai was unquestionably acting in "the role of an advocate in connection with a judicial proceeding," he is entitled to absolute immunity for these acts "intimately associated with the judicial phase of the criminal process."  *See Simon*, 727 F.3d 167 at 171.  All claims against ADA Lai are also dismissed with prejudice.

Conversely, the Court cannot dismiss the claims against District Attorney Singas on this ground.  As noted above, the absolute immunity defense may be resolved as a matter of law on a Rule 12(b)(6) motion only when the nature of the function performed by an individual prosecutor is "clear from the face of the complaint."  *Shmueli*, 424 F.3d at 236.  The complaint contains no factual allegations whatsoever relating to Singas, so the claims against her cannot be resolved on this basis.[3]

---

[3] While the County Defendants have sought to dismiss the official capacity claims against Singas, (*see* Section II below), they have not argued that the § 1983 claim against the District Attorney should be dismissed for lack of personal involvement.

II.     Eleventh Amendment Immunity

The County Defendants' second argument is that the claims against the County

Defendants are barred by the Eleventh Amendment to the United States Constitution.  The

Eleventh Amendment provides: "The Judicial power of the United States shall not be construed

to extend to any suit in law or equity, commenced or prosecuted against one of the United States

by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const.

amend. XI.  "The reach of the Eleventh Amendment has … been interpreted to extend beyond

the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign

sovereigns."  *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007)

(quoting *Western Mohegan Tribe & Nation v. Orange Cnty.*, 395 F.3d 18, 20 (2d Cir. 2004)).

Thus, the Eleventh Amendment "bars a damages action in federal court against a state and its

officials when acting in their official capacity unless the state has waived its sovereign immunity

or Congress has abrogated it."  *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804

F.3d 178, 193 (2d Cir. 2015).  Eleventh Amendment immunity extends to state officials because

"a suit against a state official in his or her official capacity is not a suit against the official but

rather is a suit against the official's office.  As such, it is no different from a suit against the State

itself."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations

omitted).

"When prosecuting a criminal matter, a district attorney in New York State, acting in a

quasi-judicial capacity, represents the State not the county."  *Ying Jing Gan v. City of New York*,

996 F.2d 522, 535–36 (2d Cir. 1993) (quoting *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988),

*cert. denied*, 488 U.S. 1014 (1989)).  Moreover, "because the prosecutor [is] representing the

state, the county [can]not be held legally responsible for injuries that the prosecutor … cause[s]"

during the prosecution.  *Bellamy v. City of New York*, 914 F.3d 727, 757 (2d Cir. 2019).

However, "a county prosecutor's actions are a function of state policies, rather than city policies,

only where plaintiff's 'claims center[ ] … on decisions whether or not, and on what charges, to

prosecute,' and not where those claims focus 'on the administration of the district attorney's

office.'"  *Id.* at 758 (quoting *Ying Jing Gan*, 996 F.2d at 536).  For example, if plaintiff's claims

are "based not upon a specific decision of the District Attorney to prosecute but upon the

County's long history of negligent disciplinary practices regarding law enforcement personnel,"

the County, rather than the State, is the responsible party and Eleventh Amendment immunity

does not apply.  *See id.* (quoting *Gentile v. County of Suffolk*, 926 F.2d 142, 152 n.5 (2d Cir.

1991)).

      To the extent that Clifford's complaint seeks to hold the County, the NCDAO, or District

Attorney Singas liable for the decision to charge and prosecute him while refusing to prosecute

Sgt. Nielsen, those claims are barred by the Eleventh Amendment.  *See Bellamy*, 914 F.3d at

758.  However, the complaint also repeatedly alleges that the County and the NCDOA had a

policy of ignoring and refusing to investigate or prosecute police misconduct of the sort that

allegedly occurred in this case.  (Compl. ¶¶ 47, 62, 65, 87.)  While those allegations may not be

sufficient to allege a *Monell* claim – as discussed in section IV, below – these allegations of

"negligent disciplinary practices regarding law enforcement personnel" are not subject to

dismissal under the Eleventh Amendment.  *See Bellamy*, 914 F.3d at 758; *Gentile*, 926 F.2d at

152 n.5.

III.    <u>The § 1983 Claim</u>

      The first section of the County Defendants' third argument and the City Defendants' first

argument seek to dismiss Clifford's first cause of action, which alleges a claim under 42 U.S.C. §

1983. "To state a claim under § 1983, a plaintiff must allege two elements: (1) 'the violation of a right secured by the Constitution and laws of the United States,' and (2) 'the alleged deprivation was committed by a person acting under color of state law.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (quoting *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004). In addition, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). "[P]ersonal involvement for these purposes … mean[s] direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). "Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient, and supervisors cannot be held liable based solely on the alleged misconduct of their subordinates." *Kee v. Hasty*, No. 01-CV-2123 (KMW) (DF), 2004 WL 807071, at *12 (S.D.N.Y. Apr. 14, 2004) (internal citations omitted).

The first step in analyzing a § 1983 claim is to identify the specific federal right allegedly infringed. *See Albright v. Oliver*, 510 U.S. 266, 269 (1994). Clifford's first cause of action alleges that Tangney, all police officers, and the district attorneys violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights by "unlawfully detaining, arresting, accusing, imprisoning, prosecuting and convicting" him and by "impounding his vehicle on two separate occasions without probable cause." (Compl. ¶ 76.) Disregarding the allegations regarding the vehicles, the City Defendants interpret Clifford's § 1983 claim as alleging false arrest, false imprisonment, malicious prosecution, and wrongful conviction and argue that Clifford's

19

conviction for menacing in the second degree bars all four of these claims.  The Court agrees

with the City Defendants' interpretation of the constitutional violations alleged in the first cause

of action and, accordingly, analyzes whether Clifford's conviction bars these causes of action.[4]

For purposes of this discussion, the Court "need not distinguish between the torts of false

imprisonment and false arrest, which are 'virtually synonymous.'" *Nieves v. Bartlett*, 139 S. Ct.

1715, 1726 n.2 (2019) (quoting  35 C.J.S., False Imprisonment § 2, p. 522 (2009)).  Moreover, a

"§ 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free

from unreasonable seizures, including arrest without probable cause, … is substantially the same

as a claim for false arrest under New York law …." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.

1996) (internal citations omitted).  "Under New York law, the elements of a false arrest and false

imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was

conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the

confinement was not otherwise privileged.'" *Hernandez v. United States*, 939 F.3d 191, 199 (2d

Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (*per curiam*)).

Thus, to state a claim for false arrest or false imprisonment "under section 1983 or New York

law, a plaintiff must allege [among other things] that … the confinement was not otherwise

privileged." *Kearney v. Westchester Cty. Dep't of Correction*, 506 F. App'x 45, 45–46 (2d Cir.

2012) (unpublished op.)  "For purposes of the privilege element of a false arrest and

imprisonment claim, an act of confinement is privileged if it stems from a lawful arrest supported

---

[4] In his opposition papers, Clifford states that he also seeks to raises an Eighth Amendment claim.  However, that claim is not alleged in the pleading.  Moreover, it is unclear how Clifford could state a viable Eighth Amendment claim since the events alleged in the complaint occurred prior to his conviction.  *See Ingraham v. Wright*, 430 U.S. 651, 664 (1977) (Eighth Amendment only protects convicts).

by probable cause." *Hernandez*, 939 F.3d at 199 (quoting *De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 759 (2016)).

Similarly, "[i]n order to prevail on a malicious prosecution claim under both Section 1983 and New York State law, a plaintiff is required to demonstrate: (i) the commencement or continuation of a criminal proceeding against her; (ii) the termination of the proceeding in her favor; (iii) 'that there was no probable cause for the proceeding'; and (iv) 'that the proceeding was instituted with malice.'" *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)).   Thus, "[t]o state a claim for malicious prosecution under § 1983, a plaintiff must allege '(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, …  (4) that the prosecution was terminated in the plaintiff's favor …, [and] that there was (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.'" *Olaizola v. Foley*, 797 F. App'x 623, 624 (2d Cir. 2020) (summary order) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) (internal quotation marks omitted).

In this case, Clifford's pleading alleges that his "unlawful detention, arrest, imprisonment, prosecution and conviction were without probable cause" and that defendants acted "with the knowledge that he was innocent of any crime."  (Compl. ¶ 77.)   However, those allegations are not only conclusory but contradicted by the allegation that Clifford was in fact found guilty of menacing, one of the charges for which he was prosecuted.  (Compl. ¶ 74.)  A conviction on a charge stemming from the incident that resulted in the plaintiff's arrest and prosecution "necessarily establishes probable cause for both that arrest and the ensuing prosecution." *Corsini v. Brodsky*, 731 F.App'x 15, 18 (2d Cir. 2018) (summary order).

21

Accordingly, Clifford's complaint fails to state claim for false arrest, false imprisonment, or malicious prosecution under either §1983 or New York law.

Clifford's pleading also fails to state a claim for wrongful conviction. "In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). Clifford concedes that at the time this action was commenced in late March 2019, the appeal from his menacing conviction was still pending. (Compl. ¶ 74.) Accordingly, Clifford also has not alleged a wrongful conviction claim.

Since Clifford has not stated a claim for false arrest, false imprisonment, malicious prosecution, or wrongful conviction, the § 1983 claims related to these alleged constitutional violations are dismissed without prejudice to renewing them if Clifford's appeal or a subsequent petition for a writ of habeas corpus proves successful.[5] However, the City Defendants have not moved to dismiss the claims that the police impounded his vehicle without probable cause. Accordingly, the §1983 cause of action shall continue with respect to the allegations that defendant Pennetti unconstitutionally seized Clifford's vehicle on March 29, 2016, and that Lt. Ryan ordered John Doe #8 to unconstitutionally seize Clifford's vehicle in late April 2016.

IV.     Municipal Liability

The third section of the County Defendants' third argument and the City Defendants' fourth argument seek to dismiss Clifford's second cause of action, which seeks to impose

---

[5] In light of this holding, the Court need not address the City Defendants' third argument, which seeks to dismiss the § 1983 claims against Tangney.

municipal liability on the County and the City. "Under § 1983, local governments are responsible only for 'their own illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). "They are not vicariously liable under § 1983 for their employees' actions." *Id.* "In other words, 'a city cannot be held liable under § 1983 on a theory of *respondeat superior*.'" *Hu v. City of New York*, 927 F.3d 81, 104 (2d Cir. 2019) (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004)).

"Under the standards of *Monell v. Department of Social Services*, 436 U.S. 658 … (1978), a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. at 690–91.) "In order to state a claim for municipal liability under *Monell* … , a plaintiff must allege that 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers.'" *Ceparano v. Suffolk Cnty. Dep't of Health*, 485 F. App'x 505, 508 (2d Cir. 2012) (unpublished op.) (quoting *Monell*, 436 U.S. at 690).

"The inference that … [an unconstitutional] policy existed may arise from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993) (internal quotation marks and citations omitted), *overruled on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)). "But '[t]he mere assertion … that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'" *Montero v. City of Yonkers, N.Y.*, 890 F.3d 386, 403–

04 (2d Cir. 2018) (quoting *Dwares*, 985 F.2d at 100). "Similarly, the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Dwares*, 985 F.2d at 100. Furthermore, "[a] single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Id.* (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985); *Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 328 (2d Cir. 1986); *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir.) *cert. denied*, 449 U.S. 1016 (1980)).

In this case, Clifford's pleading baldly asserts that the County and City, through their agencies, the NCDAO and the LBPD, had "policies, customs or usages of failing to properly train, supervise or discipline … police officers and district attorneys concerning correct practices in conducting investigations and … prosecutions; making and processing arrests; their obligations not to promote or condone perjury and not to assist in the prosecution of innocent persons …." (*Id.* ¶ 87.) The complaint further asserts that these municipalities "permitted and tolerated a pattern and practice of unconstitutional, unjustified, unreasonable and illegal abuses including … arrests of innocent persons by police officers and unlawful prosecutions by … district attorneys …." (*Id.*) However, except for allegations that Sgt. Nielsen was once accused of using excessive force (which is not alleged in this case), and that an LBPD officer (possibly Sgt. Nielsen) once improperly breathalyzed Clifford, the complaint he does not allege any facts to support these assertions aside from the incident alleged in the complaint.[6]

---

[6] The allegations that Sgt. Nielsen "had to plead immunity from prosecution for using excessive force during a minor arrest situation where he blinded an eye of a young unarmed defendant with his nightstick while making the arrest," (Compl. ¶ 93(a)), allude to *Schroeder v. County of Nassau*, a ¶ 1983 action brought against the County, the City, Sgt. Nielsen, and others. In granting summary judgment to the defendants in that case, Judge Hurley held that there was "a material issue of fact as to whether Nielsen used excessive force in arresting plaintiff," but granted summary judgment to Nielsen on qualified immunity grounds. *Schroeder v. Cty. of Nassau*, 158 F. Supp. 3d 123,

24

Furthermore, as explained in Section III, above, Clifford was convicted of menacing in connection with the incident – a conviction that "necessarily establishes probable cause" for both his arrest and the ensuing prosecution.  *Corsini*, 731 F.App'x at 18.  (2d Cir. 2018).  Since there was probable cause for Clifford's arrest and conviction, allegations that the municipalities failed to take action to prevent his arrest and prosecution cannot support a claim of municipal liability. Clifford's second cause of action is therefore dismissed, along with all claims against the County, the NCDAO, the City, and the LBPD, and all official-capacity claims brought against the employees of the NCDAO or the LBPD.

V.      The § 1985(3) Conspiracy Claim

The second section of the County Defendants' third argument and the City Defendants' fifth argument seek to dismiss Clifford's third cause of action, which alleges a conspiracy in violation of 42 U.S.C. § 1985(3).  "In order to make out a Section 1985(3) claim, 'the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'"  *Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d

---

128–29 (E.D.N.Y. 2016).  Notably, Judge Hurley also granted summary judgment to the City with respect to the *Monell* claims in that case, holding:

> Plaintiff argues that the Long Beach municipal defendants' failure to conduct a proper investigation of the events leading up to plaintiff's arrest and the "unquestioning acceptance of defendant Nielsen's version of the facts" gives rise to municipal liability. … However, plaintiff has not offered any evidence that this allegedly improper conduct was attributable to a formal policy or that the type of investigative failures alleged here were widespread.  Nor has he offered any evidence of a failure to train or supervise officers.

*Schroeder*, 158 F. Supp. 3d at 131.  Accordingly, this incident cannot be used to substantiate Clifford's *Monell* claim in this case.

Cir. 2013) (unpublished op.) (quoting *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 828–29 (1983)). "To withstand a motion to dismiss a … § 1985(3) conspiracy claim, a plaintiff 'must provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end,' augmented by 'some details of time and place and the alleged effects of the conspiracy.'" *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 208–09 (S.D.N.Y. 2013) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)). "A plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy, but the pleadings must present facts tending to show agreement and concerted action." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) (internal citation and quotation marks omitted). However, "'complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.'" *Corsini v. Nast*, 613 F. App'x 1, 3 (2d Cir. 2015) (summary order) (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002)).

Section 1985(3) also requires that "there … be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Thus, "[i]n order to plead a cognizable civil rights conspiracy claim under § 1985(3), a plaintiff is also required to allege that she was a member of a protected class, and that the conspirators acted with a class-based, 'invidiously discriminatory motivation.'" *K.D. ex rel. Duncan*, 921 F. Supp. 2d at 209 (quoting *Griffin*, 403 U.S. at 102).

In this case, Clifford's complaint does not adequately allege a conspiracy, much less "racial, or perhaps otherwise class-based, invidiously discriminatory animus" animating that

conspiracy.  *See Griffin*, 403 U.S. at 102.  First, the only allegation of conspiracy in the complaint – that "the police officer defendants conspired among themselves and with the district attorney defendants and with other individuals to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983" – is entirely conclusory.  The pleading does not "present facts tending to show agreement and concerted action" on the part of defendants.  *See Fisk*, 401 F. Supp. 2d at 376.  Second, the pleading does not allege that Clifford is a member of a protected class or allege facts suggesting that any of the defendants acted with a class-based, 'invidiously discriminatory motivation.'"  *K.D. ex rel. Duncan*, 921 F. Supp. 2d at 209.  Accordingly, the County and City Defendants' motion to dismiss the third cause of action is granted.

VI.    The State-Law Claims

The County Defendants' fourth argument and the City's Defendants second argument both seek to dismiss all five state-law claims.  The County Defendants argue that Clifford failed to file a notice of claim with the County as required by New York General Municipal Law 50-e, while the City Defendants argue that Clifford's state-law claims are time-barred by operation of New York General Municipal Law § 50-i.  Section 50-e(1)(a) provides, in pertinent part:

> In any case founded upon tort where a notice of claim is required
> by law as a condition precedent to the commencement of an action
> or special proceeding against a public corporation, as defined in
> the general construction law, or any officer, appointee or employee
> thereof, the notice of claim shall comply with and be served in
> accordance with the provisions of this section within ninety days
> after the claim arises ….

Section 50-i(1) provides, in pertinent part:

> No action … shall be prosecuted or maintained against a city,
> county, town, village, fire district or school district for personal
> injury, wrongful death or damage to real or personal property
> alleged to have been sustained by reason of the negligence or
> wrongful act of such city, county, town, village, fire district or

27

> school district or of any officer, agent or employee thereof, …
> unless, (a) a notice of claim shall have been made and served upon
> the city, county, town, village, fire district or school district in
> compliance with section fifty-e of this article, (b) it shall appear by
> and as an allegation in the complaint or moving papers that at least
> thirty days have elapsed since the service of such notice, … and
> that adjustment or payment thereof has been neglected or refused,
> and (c) the action or special proceeding shall be commenced within
> one year and ninety days after the happening of the event upon
> which the claim is based ….

N.Y. Gen. Mun. Law § 50-i(1).  A district court is obligated to apply these notice-of-claim

provisions to New York state-law claims.  *Diarra v. City of New York*, 771 F. App'x 69, 71 (2d

Cir.) (summary order), *cert. denied sub nom. Diarra v. City of New York, N.Y.*, 140 S. Ct. 577

(2019), *reh'g denied sub nom. Diarra v. City of New York*, 140 S. Ct. 922 (2020).

"In New York, '[a]s a general principle, the statute of limitations begins to run when a

cause of action accrues, that is, when all of the facts necessary to the cause of action have

occurred so that the party would be entitled to obtain relief in court.'"  *Consol. Energy Design

Inc. v. Princeton Club of New York*, 590 F. App'x 115, 115–16 (2d Cir. 2015) (summary order)

(quoting *Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 18 N.Y.3d 765, 770 (2012)).  With

respect to most of Clifford's state-law claims, the causes of actions accrued on or about the time

of the March 29, 2016, incident.  However, the New York Court of Appeals has held that a claim

for malicious prosecution does not accrue until "the final termination of underlying criminal

proceedings."  *Britt v. Legal Aid Soc'y, Inc.*, 95 N.Y.2d 443, 448 (2000); *Gomez v. City of New

York*, No. 14-CV-5932, 2016 WL 5115499, at *2 (S.D.N.Y. Sept. 16, 2016) (malicious

prosecution claim accrues after prosecution terminates in the plaintiff's favor).  Similarly, a

claim for wrongful conviction does not accrue until that conviction is vacated on direct appeal or

by the granting of habeas corpus relief.  *See Lopez v. City of New York*, 14-CV-3743 (BMC),

2015 WL 1954470, at *8 (E.D.N.Y. Apr. 29, 2015) (claim for wrongful conviction accrued when habeas relief granted).

In this case, Clifford's complaint alleges only that he filed a notice of claim with the City. (Compl. ¶ 66.)  It does not allege that he filed a notice of claim with the County.  In addition, Clifford does not allege "in the complaint or moving papers that at least thirty days have elapsed since the service of such notice, … and that adjustment or payment thereof has been neglected or refused."  N.Y. Gen. Municipal Law § 50-e(1)(a).  To the contrary, Clifford's moving papers repeat that he filed a notice of claim only with "Long Beach Corporation Counsel."  (Opp. to County's Mot. at 11.)  Moreover, although Clifford's complaint alleges that he filed a notice of claim with the City on April 20, 2016,  (Compl. ¶ 66), he did not commence this action until March 26, 2019 – almost three years after the happening of the events which give rise to most of his claims.

In his Opposition to the City's Motion, Clifford states that he "agrees with much" of the City Defendants' statute-of-limitations argument.  (Opp. to City's Mot. at 4.)  However, he correctly notes that the statute of limitation has not begun to run with respect to his malicious prosecution claim.  (*Id.*)  Accordingly, Clifford's state-law claims, except for those alleging malicious prosecution and wrongful conviction, are dismissed with prejudice.  The state-claims for malicious prosecution and wrongful conviction – like the § 1983 claims for malicious prosecution and wrongful conviction – are dismissed without prejudice to renewal if Clifford's conviction is reversed on appeal.[7]

---

[7] Since the state-law claims are dismissed, the Court need not address the County Defendants' fifth argument and the City Defendants' sixth argument, both of which urge the Court to decline supplemental jurisdiction over the state-law claims.

**CONCLUSION**

For the reasons set forth above, the County Defendants' Motion (Doc. No. 51) and the City Defendants' Motion (Doc. No. 62) are granted, except as follows.  First, since the City Defendants have not moved to dismiss the § 1983 claims relating to the allegedly unconstitutional seizures of Clifford's automobile(s), the §1983 cause of action shall continue with respect to the allegations that defendant Pennetti unconstitutionally seized Clifford's vehicle on March 29, 2016, and that Lt. Ryan ordered John Doe #8 to unconstitutionally seize Clifford's vehicle in late April 2016.  Second, Clifford's claims against District Attorney Singas in her individual capacity may continue, but not to the extent that those claims seek to hold her liable for the decision to charge and prosecute Clifford while refusing to prosecute Sgt. Nielsen.  *See Bellamy*, 914 F.3d at 758.  Third, while Clifford's § 1983 and state-law claims for malicious prosecution and wrongful conviction are dismissed, such dismissal is without prejudice to renewing these claims if Clifford's appeal or a subsequent petition for a writ of habeas corpus proves successful.  This action is re-committed to the assigned magistrate judge for all remaining pretrial proceedings.

SO ORDERED.

Dated: Brooklyn, New York
       September 28, 2020

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge